## CHARLESTON.

AMINE L. FARRAR v. MARY C. GOODWIN et als.

(No. 4897.)

Submitted February 19, 1924.　Decided February 17, 1925.

1. SPECIFIC PERFORMANCE—*Equity Will Decree Specific Performance of Parol Gift of Land, Accompanied by Evidence of Possession and Permanent Improvements.*

Equity will decree specific performance of a parol gift of real estate, accompanied by evidence of exclusive, continuous possession of the land pursuant to the gift, and permanent improvements made upon the property in reliance thereon. (p. 218).

(Specific Performance, 36 Cyc. p. 656.)

2. SAME—*Permanent Improvements Necessary to Secure Specific Performance of Parol Gift of Land, Are Such as Owner Would Make on His Own Estate.*

Permanent improvements, under the rule stated, are such as an owner would, under the circumstances, likely make upon his own estate, as contradistinguished from improvements made by a tenant incident to the occupation of the premises. (p. 219).

(Specific Performance, 36 Cyc. p. 670.)

3. EVIDENCE—*Declarations of Donor of Land, Inconsistent With Previous Alleged Gift are Incompetent as Self-Serving.*

While the declarations of the donor against his interest are ordinarily admissible in evidence against his heirs and devisees, declarations in his own favor, inconsistent with the previous alleged gift, are incompetent as self-serving and should be excluded. (p. 219).

(Evidence, 22 C. J. § 229.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, Cabell County.

Suit by Mrs. Amine L. Farrar against Mary C. Goodwin, executrix of R. A. Goodwin, deceased, and others. From decree for defendants, plaintiff appeals.

*Reversed and remanded.*

*Harold A. Ritz, H. S. King* and *Fitzpatrick, Brown & Davis,* for appellant.

*C. W. Freeman* and *Paul W. Scott,* for appellees.

LITZ, JUDGE:

The plaintiff, Mrs. Amine L. Farrar, prosecutes this appeal from the decree of the Circuit Court of Cabell County dismissing her bill against Mary C. Goodwin, executrix, and Mary C. Goodwin, L. S. Bibb, Mary Bibb, Martha E. Bibb, and W. A. Bibb, devisees, under the will of R. A. Goodwin, deceased, seeking specific performance of an alleged parol gift of a lot of land situate in the city of Huntington.

Coming from Virginia in 1876, the deceased, R. A. (commonly called ''Captain'') Goodwin, established a residence in Huntington which was retained by him to the time of his death on May 1, 1921. Remaining single until sixty-nine years of age, in the year 1912 he intermarried with the defendant Mary C. Goodwin, a widow (Mary C. Bibb) with four children. There was no issue to this union. He left a will devising his property as a whole (without description) to his wife, the defendant Mary C. Goodwin, for life, and remainder to her four children, the defendants L. S. Bibb, Mary Bibb, Martha E. Bibb and W. A. Bibb.

The plaintiff, sixty years of age, is a niece of Captain Goodwin, her father having been his older brother. Left an orphan in early infancy, she was reared by her grandparents in Albemarle County, Virginia, living principally with those on the paternal side. Soon after her marriage, which occurred about thirty-eight years ago, at the solicitation of Captain Goodwin, plaintiff and her husband removed from Charlottesville, Virginia, to this State. Since coming to West Virginia they have lived first for about two years at Hurricane, twenty-five miles from Huntington, next eight years in Huntington, then four years in Charleston, and thereafter in Huntington. During their residence in Huntington and prior to his marriage, Captain Goodwin from time to time made his home with them as one of their family, the relation existing between the uncle and niece approaching the affection of father and child.

Having expressed the intention of building upon the lot in controversy a home for the plaintiff, in the latter part of 1905 Captain Goodwin began the erection of a dwelling on

the property. Before and during its construction he consulted the plaintiff concerning the plans of the house. Immediately after its completion in the spring of 1906, he placed her in the exclusive possession of the premises, which she has since maintained by occupying, using and treating the property as her own. During this period plaintiff has made repairs and improved the property by completing the plumbing, installing fixtures, constructing sidewalks, grading the yard, planting shrubs and fruit trees, changing an entrance to the house, adding a small room, remodeling the hall and inside stairway, painting and papering the house.

Numerous witnesses testify to declarations by Captain Goodwin tending to prove that he built the house for plaintiff and gave her the property. The defendants, insisting that the evidence is insufficient to establish the gift, however, contend:

(1) That the improvements are not sufficiently extensive and valuable to constitute permanent improvements necessary to be made by the donee to take the gift out of the statute of frauds.

In the case of *Pullain* v. *Pullain*, 76 Ga. 420, 4. S. E. 92, it is said that improvements made by the donee, in possession under an alleged parol gift of lands, although of slight value, are sufficient to pass title if they are substantial and permanent, beneficial to the freehold and are made in reliance upon the alleged gift, and are such as none but the owner would, under like circumstances, make upon the property. *Berry* v. *Berry,* 83 W. Va. 763, holds that a court of equity will enforce the performance of a parol gift of land, if such gift is made upon a meritorious consideration, and the donee has taken possession of, and improved the land. The opinion of the court states: ''That a court of equity will decree specific performance of a parol gift of land, when it is supported by a meritorious consideration and the donee has entered into possession of the property, and expended money in the improvement thereof, on the faith of the gift, is well and firmly settled.'' Citing *Frame* v. *Frame,* 32 W. Va. 463; *Harrison* v. *Harrison,* 36 W. Va. 487; *Crim* v. *England,* 46 W. Va. 480; *Cox* v. *Cox,* 26 Gratt. 305; *Pigg* v.

*Corder,* 12 Leigh 69; *Reid's Heirs* v. *Vannorsdale,* 2 Leigh 589; *Darlington* v. *McCoole,* 1 Leigh 36; *Shobe's Ex'rs.* v. *Carr,* 4 Munf. 10.

The improvements placed on the premises by the plaintiff, at considerable cost to her, are clearly such as ordinarily would be made by the owner of land as distinguished from those attached by one occupying it as tenant and, thus evidencing ownership by the plaintiff, constitute proof of the alleged gift which satisfies the statute of frauds. *Moore* v. *Moore,* 87 W. Va. 9; *Hughes* v. *Hughes,* 72 Ga. 173; *Albright* v. *Albright,* 153 Iowa, 397, 133 N. W. 737. It cannot be said that the gift, made many years before the marriage of Captain Goodwin, under the circumstances was unreasonable or unnatural; the value of the property involved being approximately $15,000.00, while that of the estate admittedly passing by the will is $100,000.00 to $125,000.00.

(2) That the payment of taxes, street assessments, insurance, and for some repairs, on the property by Captain Goodwin is at least strong proof against the gift.

It is true such expenditure by the alleged donor, unexplained, is a circumstance tending to disprove a gift, yet it is by no means conclusive. Moreover, there is evidence that Captain Goodwin paid most, if not all, of these charges out of rentals received by him from other property, owned by the plaintiff.

(3) That some of the alleged declarations of Captain Goodwin indicate his intention, in constructing the dwelling and placing the plaintiff in possession of the premises, merely to provide her a home for life.

These expressions, in our opinion, show the motive for the gift, rather than the character of the estate intended.

(4) That many years after Captain Goodwin placed the plaintiff in the exclusive possession of the property, he made declarations implying assertion of ownership in himself.

While declarations of a donor after the fact against his own interest or title are ordinarily admissible in evidence against his heirs and devisees, his declarations in his own favor, inconsistent with the previous alleged gift are incompetent as self-serving, and therefore should be excluded.

*Depue* v. *Steber*, 89 W. Va. 78, 108 S. E. 590; *Jefferson* v. *Simpson*, 83 W. Va. 274, 98 S. E. 212; *Crothers* v. *Crothers*, 40 W. Va. 169; *Albright* v. *Albright, supra.*

(5) That a short while after the death of Captain Goodwin, before institution of this suit, brief negotiations were conducted by the husband and son of the plaintiff with an attorney representing the defendant Mary C. Goodwin, involving the leasing of the property by Mrs. Goodwin to the Farrars.

These negotiations, if authorized or sanctioned by the plaintiff, do not necessarily constitute admissions against her title. Having received notice from the defendant Mary C. Goodwin to vacate, the plaintiff certainly had the right, without jeopardizing her interest, to ascertain the terms on which the property could be leased in case she chose to surrender her title in order to avoid expensive and troublesome litigation. Moreover, it is significant in this connection that she refused to accept a lease.

Deeming it unnecessary to discuss further points involving the establishment of the gift, none of which appear to be material, we are of opinion not only that it has been sufficiently proved, but that the improvements made by the donee, while in the exclusive possession and control of the property, are such as the law applicable to this case denominates permanent, and that plaintiff is entitled to the relief she seeks. *Moss* v. *Moss*, 88 W. Va. 135; *Berry* v. *Berry*, cited; *Short* v. *Patton*, 79 W. Va. 179; *White* v. *White*, 64 W. Va. 30; *Meadows* v. *Meadows*, 60 W. Va. 34; *Holsberry* v. *Harris*, 56 W. Va. 320; *Stone* v. *Hill*, 52 W. Va. 63; *Miller* v. *Lorentz*, 39 W. Va. 160; *Gallagher* v. *Gallagher*, 31 W. Va. 9; *Lorentz* v. *Lorentz*, 14 W. Va. 761; 36 Cyc. p. 681 *et seq.;* 5 Pomeroy's Equity Jurisp., 2nd ed., sec. 2243.

The decree of the Circuit Court is reversed, the plaintiff granted the relief prayed for, and the case remanded with directions to proceed in accordance with this ruling.

*Reversed and remanded.*